**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| A.A., by and through her mother, | § | |
| BETH ADAMS, and BETH ADAMS | § | |
| | § | |
| Plaintiffs, | § | Case No: 1:24-cv-01070-RP |
| | § | |
| v. | § | |
| | § | |
| LONE STAR REGION VOLLEYBALL | § | |
| ASSOCIATION, INC.; AUSTIN PERFORMANCE | § | |
| VOLLEYBALL, INC.; JUNIOR VOLLEYBALL | § | **JURY TRIAL DEMANDED** |
| ASSOCIATION OF AUSTIN; WAMSFTX, LLC | § | |
| FHBUDA, LLC; | § | |
| | § | |
| Defendants. | § | |

### PLAINTIFF'S FIRST AMENDED COMPLAINT AND JURY DEMAND

Plaintiffs A.A., by and through her mother BETH ADAMS, and BETH ADAMS ("Plaintiffs"), by and through undersigned counsel, file this complaint against Defendants LONE STAR REGION VOLLEYBALL ASSOCIATION, INC., AUSTIN PERFORMANCE VOLLEYBALL, INC., JUNIOR VOLLEYBALL ASSOCIATION OF AUSTIN, WAMSFTX, LLC, and FHBUDA, LLC (collectively, "Defendants"), and state:

### I.

#### PRELIMINARY STATEMENT

1.      Plaintiffs, individuals who are deaf, bring this action against Defendants. Defendants discriminated against Plaintiffs by refusing to provide qualified sign language interpreters necessary to ensure effective communication with Plaintiffs during volleyball practices and/or tournaments.  As a result of Defendants' discriminatory actions, A.A. does not have the same opportunities as similarly situated hearing individuals to participate in and benefit from youth volleyball events, and A.A.'s mother Beth Adams does not have the same opportunity

as other parents to participate in and benefit from attending volleyball events.  Defendants' conduct violated and continues to violate the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*, and Texas Human Resources Code § 121.001, *et seq*.  Plaintiffs bring this lawsuit to require Defendants to cease their unlawful discriminatory practices and implement policies and procedures, including providing qualified sign language interpreters, that will ensure effective communication, equal access, and an equal opportunity for Plaintiffs to participate in and benefit from Defendants' programs and activities.  Plaintiffs seek declaratory relief, injunctive relief, compensatory damages, reimbursement of out-of-pocket expenses, attorneys' fees, and costs.

## II.

### PARTIES

2.      Plaintiffs reside in Austin, Texas, within Travis County.

3.      Lone Star Region Volleyball Association, Inc. ("Lone Star Region") is a corporate entity that governs volleyball competition in Texas.  Lone Star Region regulates and conducts volleyball competitions, including hosting volleyball tournaments.  Pursuant to its Form 990 filed in 2022, Lone Star Region generated more than $684,000 in revenues for the calendar year ending in 2022.  Lone Star Region has its principal place of business at 7926 Sturdy Oaks Trail, Live Oak, TX 78233.  Lone Star Region's registered agent is Will Vick and the address for the registered agent is 1608 Canyon Oak, Schertz, TX 78154.

4.      Austin Performance Volleyball, Inc. ("Austin Performance Volleyball") is a volleyball association with teams that conduct practices and compete in volleyball competitions.  Austin Performance Volleyball conducts practices and hosts tournaments at reserved venues.  Pursuant to its most recent publicly available Form 990, it generated more than $3 million in revenues for the time period from July 1, 2022 to June 30, 2023.  It has its principal place of

business at 5102 Canella Drive, Austin, TX 78744.  Its registered agent is Denver Lee, and the address for the registered agent is 5102 Canella Drive, Austin, TX 78744.

5.  Junior Volleyball Association of Austin is a volleyball association with teams that conduct practices and compete in volleyball competitions, and also owns Austin Sports Center where its teams practice and where it also hosts volleyball tournaments.  This entity operates under the assumed names of Austin Sports Center and Austin Junior Volleyball.  This Defendant is referred to as "Austin Junior Volleyball" in this Complaint, and this name is intended to refer to Defendant in its entirety.  Pursuant to its most recently publicly available Form 990, it generated more than $11.5 million in revenues during the time period October 1, 2022 to September 30, 2023.  It its principal place of business at 425 Woodward Street, Austin, TX 78704.  Its registered agent is Kathy Lietzke, and its registered agent's address is 425 Woodward Street, Austin, TX 78704.

6.  WAMSFTX, LLC owns or operates the volleyball team CTX Juniors and Sunfield Station where the team has its practices and where it also hosts tournaments.  WAMSFTX, LLC has its principal place of business at 2610 Main Street, Suite 101, Buda, TX 78610.  WAMSFTX, LLC's service agent is Mike Beltz, 911 FM 1626 Suite 101, Austin, TX 78748.

7.  FHBUDA, LLC owns or operates the volleyball team CTX Juniors and Sunfield Station where the team has its practices and where it also hosts tournaments.  FHBUDA, LLC has its principal place of business at 2610 Main Street, Suite 106, Buda, TX 78610.  FHBUDA, LLC's service agent is Mike Beltz, 911 FM 1626 Suite 101, Austin, TX 78748.

8.  Co-Defendants WAMSFTX, LLC and FHBUDA, LLC jointly own or operate the volleyball team CTX Juniors and Sunfield Station where the team has its practices and where it also hosts tournaments.  They are referred to collectively in this Complaint as "CTX Juniors".

## III.

### JURISDICTION AND VENUE

9. Plaintiffs' claims arise under the ADA, 42 U.S.C. § 12101, *et seq.* This Court has jurisdiction of this action under 28 U.S.C. §§ 1331, 1343(a)(4).

10. This Court has supplemental jurisdiction over Plaintiffs' state-law claims pursuant to 28 U.S.C. § 1367.

11. Venue is proper because the events giving rise to this lawsuit occurred within this District and Division and each Defendant is located in this District.

## IV.

### FACTUAL ALLEGATIONS

12. A.A. is deaf.

13. A.A. is substantially limited in the major life activities of hearing and speaking.

14. A.A. uses American Sign Language as her primary means of communication.

15. Beth Adams is A.A.'s mother.

16. Ms. Adams is deaf.

17. Ms. Adams is substantially limited in the major life activities of hearing and speaking.

18. Ms. Adams uses American Sign Language as her primary means of communication.

19. For more than simple communications in writing, qualified sign language interpreters are necessary to ensure effective communication between Plaintiffs and individuals who do not know sign language.

20. A.A. is passionate about volleyball, and has played volleyball, including on volleyball teams, since she was 7 years old.

21.     A.A. began playing at the club level when she was 11 years old.

22.     Ms. Adams regularly attends A.A.'s practices and competitions, as do parents of other team members.

23.     During team practices, there is coaching and instruction that is detailed and includes real-time feedback during drills, simulated games.  Qualified sign language interpreters are necessary for A.A. to have a full and equal opportunity to participate in and benefit from this coaching and instructions.

24.     Qualified sign language interpreters are similarly necessary for Ms. Adams to have the same access to this communication as other hearing parents who attend the practices.

25.     The team practices also offer learning opportunities for A.A. and her peers including team-building, learning how to work together as a team, developing social skills including leadership skills.

26.     When qualified sign language interpreters are not present, A.A. is unable to understand what is happening and becomes withdrawn.  In such circumstances, she does not have access to information or coaching and this affects her skills development and performance, and she does not improve as a volleyball player without access to that information.  She becomes visibly emotional and frustrated because she does not have full and equal access.

27.     When there is a qualified sign language interpreter present, A.A. is able to participate fully and becomes much more active and engaged in the same opportunities that are available to her hearing peers.

28.     When A.A. was 11 years old, she played for a team called Roots.  There were interpreters for all practices and tournaments that year, and as a result, A.A. had access to effective communication the entire season.

29. When A.A. was 12 years old, she played for Austin Junior Volleyball. There were interpreters for all practices and tournaments that year, and as a result, A.A. had access to effective communication the entire season.

30. From January 2024 to April 2024, when A.A. was 13 years old, she was a member of Austin Performance Volleyball's 13 Lite team.

31. Prior to the first practice, A.A. requested that Austin Performance Volleyball provide qualified sign language interpreters for team practices that occurred on Sundays and Tuesdays.

32. Austin Performance Volleyball initially agreed to provide qualified sign language interpreters for these team practices which were conducted at venues that Austin Performance Volleyball reserved for such events.

33. A.A.'s team participated in numerous tournaments during the season under the supervision and direction of Lone Star Region.

34. Lone Star Region requires all teams and individuals participating in USA Volleyball sanctioned events in the region to be members of the Lone Star Region.

35. Lone Star Region sanctions tournaments and sets forth extensive rules and regulations that all teams and players must follow, including but not limited to the rules governing the officiating, seeding at tournaments, the uniforms the players must wear, and transfer of players between teams. Registered teams are not permitted to play in unsanctioned events. Lone Star Region's handbook provides for disciplinary actions including imposing fines, suspending players and/or teams.

36. Clubs wishing to host tournaments must contact Lone Star Region for dates to be approved. Lone Star Region provides the materials for the tournaments, including tournament and

post-tournament guidelines, official entry forms, information sheets, club/team contact information, pool and playoff schedules, score sheets and line-up sheets, position charts, and the certificate of insurance. Lone Star Region also collects fees for each team that participates in each tournament.

37.     During tournaments, qualified sign language interpreters are necessary to ensure effective communication for the same reasons that interpreters are needed during team practices. Additionally, qualified interpreters are necessary to ensure effective communication with individuals from other teams, and also with referees and tournament officials who convey information about the rules, officiating, announcements, and ceremonies including the opening and closing ceremonies.

38.     Qualified sign language interpreters are similarly necessary for Ms. Adams to have the same access to this communication as other hearing parents who attend the tournaments.

39.     Lone Star Region has instructed entities hosting or co-hosting Lone Star Region-sanctioned tournaments that they are not responsible for providing sign language interpreters to ensure effective communication.

40.     As a result of Lone Star Region's instruction, entities hosting or co-hosting Lone Star Region-sanctioned tournaments have refused to provide sign language interpreters to ensure that Plaintiffs have access to effective communication.

41.     The first tournament took place on February 10, 2024. Roots, the team that A.A. had played for when she was 11 years old, hosted that tournament and agreed to provide qualified sign language interpreters to ensure effective communication during the tournament.

42.     The second tournament took place on February 24, 2024. Austin Junior Volleyball hosted the tournament under the supervision of Lone Star Region, and the tournament took place

at the Austin Sports Center, a venue that Austin Junior Volleyball owns or operates in Austin, Texas. Lone Star Region instructed Austin Junior Volleyball that Austin Junior Volleyball was not required to provide sign language interpreters at this tournament. Austin Junior Volleyball and Lone Star Region declined to provide interpreters for this tournament despite repeated requests for interpreters. Austin Junior Volleyball declined to provide interpreters even though it had provided interpreters for A.A. for practices and tournaments the prior year when she played for Austin Junior Volleyball. Austin Performance Volleyball also declined to provide interpreters for this tournament.

43.     As a result of the lack of qualified interpreters at the second tournament, A.A. missed out on all communication and was forced to depend on her mother Ms. Adams for communication. Since, however, Ms. Adams is also deaf, she was able to convey only what limited information she could herself understand. A.A. became visibly upset due to the lack of communication and her coach and teammates thought she was upset with them. She was benched as a result of her frustration.

44.     The third tournament took place on March 23, 2024. CTX Juniors hosted the tournament under the supervision of Lone Star Region, and the tournament took place at Sunfield Station, a venue that CTX Juniors owns or operates in Buda, Texas. Upon information and belief, Lone Star Region instructed CTX Juniors that CTX Juniors was not required to provide sign language interpreters at this tournament. CTX Juniors and Lone Star Region declined to provide interpreters for this tournament despite repeated requests for interpreters. Austin Performance Volleyball also declined to provide interpreters for this tournament.

45.     Given A.A.'s lack of effective communication at the second tournament and the refusal by CTX Juniors, Lone Star Region, and Austin Performance Volleyball to arrange for

interpreters at the March 23, 2024 tournament, Ms. Adams was forced to pay out of pocket for a qualified interpreter at the third tournament to ensure that A.A. had access to effective communication.

46.     The season-ending tournament took place on April 27-28, 2024.  Lone Star Region hosted the tournament at the George R. Brown Convention Center in Houston, Texas.  Even though Lone Star Region had provided interpreters for A.A. at the previous year's season-ending tournament that it hosted, it refused to do so for this tournament.  Austin Performance Volleyball also declined to provide interpreters for this tournament.

47.     As a result, Ms. Adams was forced to pay out of pocket for a qualified interpreter at the season-ending tournament to ensure that A.A. had access to effective communication.

48.     In March 2024, counsel for A.A. and Ms. Adams reached out to Austin Performance Volleyball regarding the lack of qualified sign language interpreters at tournaments and asserting Plaintiff's rights under federal and state law.

49.     In response, on or about April 1, 2024, counsel for Austin Performance Volleyball stated that Austin Performance Volleyball would no longer provide qualified sign language interpreters for team practices.

50.     Thereafter, in retaliation, Austin Performance Volleyball stopped providing qualified sign language interpreters at team practices, even though there were only approximately 8 practices left, with the season ending at the end of April 2024.

51.     As a result of Austin Performance Volleyball's refusal to provide qualified sign language interpreters for team practices, Ms. Adams was forced to pay out of pocket to ensure that there continued to be qualified sign language interpreters to ensure that her daughter continued to have access to effective communication during team practices.

52.    On June 29-30, 2024, Austin Performance Volleyball hosted tryouts for the age-14 season.  Austin Performance Volleyball did not provide qualified interpreters for the tryouts, forcing Ms. Adams to again pay out-of-pocket for interpreters to ensure effective communication.

53.    Austin Performance Volleyball did not select A.A. for any of its age-14 teams.

54.    Thereafter, A.A. signed up for CTX Juniors' elite training program that hosted training practices every Tuesday and Thursday from July 9, 2024 through August 1, 2024.

55.    Plaintiffs requested that CTX Juniors provide qualified sign language interpreters for these training practices.  CTX Juniors refused, again forcing Ms. Adams to pay out of pocket for qualified interpreters to ensure that A.A. had access to effective communication during these practices.

56.    During CTX Juniors practices, qualified interpreters were necessary for the same reasons as they had been during Austin Performance Volleyball practices.  Additionally, the CTX elite training program introduced weightlifting, which was A.A.'s first time doing such training, and extensive instruction was necessary to ensure that she engaged in such training safely and effectively.

57.    In October 2024, after this lawsuit was filed, Plaintiffs registered A.A. for tryouts with Austin Performance Volleyball that were to take place in October/November 2024.

58.    Austin Performance Volleyball, however, refused to permit A.A. to try out for the team, citing this lawsuit and claiming that it would "not be fair" to Austin Performance Volleyball to offer A.A. a place on an Austin Performance Volleyball team.

59.    Upon information and belief, Lone Star Region continues to instruct entities hosting or co-hosting Lone Star Region-sanctioned tournaments that they are not responsible for providing

qualified sign language interpreters to ensure effective communication, with the result that Ms. Adams is forced to pay out of pocket for interpreting services.

60.    A.A. has suffered humiliation and frustration when there have been no qualified sign language interpreters present and she was unable to communicate effectively with the coaches/instructors or with the other participants.

61.    Ms. Adams has suffered economic harm and stress and consequential damages in being forced to pay for the cost of qualified sign language interpreters when Defendants refused to provide such interpreters to ensure effective communication.

62.    Ms. Adams has additionally suffered humiliation and frustration in repeatedly requesting that Defendants provide qualified sign language interpreters to ensure effective communication with A.A., only for Defendants to repeatedly refuse her requests, and in herself being denied access to effective communication when there were no qualified sign language interpreters present.

63.    Ms. Adams suffered further humiliation and frustration when Austin Performance Volleyball retaliated against her by terminating the provision of qualified sign language interpreters when she retained counsel to advocate for her daughter's right to effective communication.

64.    A.A. and Ms. Adams also suffered humiliation and frustration when Austin Performance Volleyball refused to permit A.A. to try out for its teams after this lawsuit was filed.

65.    A.A. and Ms. Adams have also suffered humiliation and frustration as a result of Lone Star Region informing entities that they are not required to provide qualified sign language interpreters to ensure effective communication.

66.     A.A. plays and expects to continue playing volleyball for clubs in the Lone Star Region for the foreseeable future, and she anticipates playing for or training with any of the other named Defendants and/or participating in tournaments hosted by any of the Defendants.

CAUSES OF ACTION

**FIRST CAUSE OF ACTION**

**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT**

67.     Plaintiffs repeat and reallege all paragraphs in support of this claim.

68.     A.A. and Ms. Adams are substantially limited in the major life activities of hearing and speaking and are therefore individuals with a disability within the meaning of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12102(2).

69.     Each Defendant is a private entity.

70.     Additionally, each Defendant owns, leases, and/or operates a place of public accommodation as defined under Title III of the ADA, 42 U.S.C. § 12181(7)(C), (D), (F), (I), (J), (L).

71.     Title III of the ADA prohibits discrimination on the basis of disability in "the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any places of public accommodations . . . ." 42 U.S.C. § 12182(a).

72.     Pursuant to Title III of the ADA and its implementing regulations, a public accommodation cannot deny participation or offer an unequal or separate benefit to individuals with disabilities.  A public accommodation is required to administer its programs and activities in the most integrated setting appropriate to meet the needs of qualified individuals with disabilities. 42 U.S.C. § 12182(b)(1)(A) and (B); 28 C.F.R. §§ 36.202; 36.203.

73.     Pursuant to Title III of the ADA and its implementing regulations, a public accommodation must take reasonable modifications in policies, practices, or procedures, when necessary to ensure access for people with disabilities. 42 U.S.C. § 12182(b)(2)(A)(ii); 28 C.F.R. § 36.302(a).

74.     Pursuant to Title III of the ADA and its implementing regulations, a public accommodation shall furnish appropriate auxiliary aids and series to ensure effective communication with individuals with disabilities.   This includes qualified sign language interpreters.  42 U.S.C. § 12182(b)(2)(A)(iii); 28 C.F.R. § 36.303(b)(1).

75.     Title V of the ADA prohibits retaliation against "any individual because such individual has opposed any act or practice made unlawful" by the ADA, or "because that individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under the ADA.  42 U.S.C. § 12203(a); *see also* 28 C.F.R. § 36.206(a).

76.     Title V of the ADA further states that "[i]t shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by" the ADA.  42 U.S.C. § 12203; *see also* 28 C.F.R. § 36.206(b).  These Title V of the ADA provisions apply to private and public entities, whether or not they are also places of public accommodation.  28 C.F.R. § 36.206(a), (b); *see also* 28 C.F.R. Pt. 36, App. C.

77.     Each Defendant has discriminated against Plaintiffs on the basis of disability by refusing to provide qualified sign language interpreters necessary to ensure effective communication.

78.     Each Defendant has discriminated and continues to discriminate against Plaintiffs on the basis of disability by denying A.A. equal participation in the services, programs, and benefits each Defendant offers to other individuals, and by refusing to provide qualified sign language interpreters, in violation of Title III of the ADA, 42 U.S.C. § 12182.

79.     Defendants Lone Star Region and Austin Performance Volleyball have retaliated against and/or interfered with Plaintiffs' assertion of Plaintiffs' rights to effective communication by ceasing to provide qualified interpreters when such interpreters had previously been provided.

80.     Defendant Austin Performance Volleyball retaliated against Plaintiffs' assertion of their right to effective communication, by refusing to permit A.A. to try out for a team after this lawsuit was filed.

81.     Defendant Lone Star Region has and continues to interfere with Plaintiffs' right to effective communication by instructing other entities that they are not responsible for providing qualified interpreters.

82.     Each Defendant has harmed and continues to harm Plaintiffs who have suffered injury and incurred costs because of the unlawful acts of each Defendant.

## SECOND CAUSE OF ACTION

## VIOLATION OF THE TEXAS HUMAN RESOURCES CODE § 121.001, *et seq.*

83.     Plaintiffs repeat and reallege all paragraphs in support of this claim.

84.     Each Plaintiff is a person with a disability because they have a "hearing impairment" and/or "deafness".  Tex. Hum. Res. Code § 121.002(4)(C), (D).

85.     Defendants are each a "public facility" subject to Chapter 121 of the Texas Human Resources Code.  Tex. Hum. Res. Code § 121.002(5) and operate in public facilities.

86.    Tex. Hum. Res. Code § 121.003(a) provides that "[p]ersons with disabilities have the same right as persons without disabilities to the full use and enjoyment of any public facility in the state."

87.    Tex. Hum. Res. Code § 121.003(d) defines discrimination to include the failure to "make reasonable accommodations in policies, practices, and procedures" or "provide auxiliary aids and services necessary to allow the full use and enjoyment of the public facility."

88.    Each Defendant has discriminated and continues to discriminate against Plaintiffs on the basis of disability by denying A.A. full use and enjoyment of the services, programs, and benefits each Defendant offers to other individuals, and by refusing to provide qualified sign language interpreters necessary to ensure effective communication.

89.    Each Defendant was on notice of Plaintiff's request and need for auxiliary aids and services and reasonable modifications, yet failed to take the steps necessary to ensure that such auxiliary aids and services and reasonable accommodations were provided.

90.    Defendants Lone Star Region and Austin Performance Volleyball have retaliated against and/or interfered with Plaintiffs' assertion of Plaintiffs' rights to effective communication by ceasing to provide qualified interpreters when such interpreters had previously been provided.

91.    Defendant Austin Performance Volleyball retaliated against Plaintiffs' assertion of their right to effective communication, by refusing to permit A.A. to try out for a team after this lawsuit was filed.

92.    Defendant Lone Star Region has and continues to interfere with Plaintiffs' right to effective communication, by instructing other entities that they are not responsible for providing qualified interpreters.

93.    Each Defendant has harmed and continues to harm Plaintiffs who have suffered injury and incurred costs because of its unlawful acts.

## VI.

### JURY TRIAL DEMAND

94.    Plaintiffs hereby demand a trial by jury.

## VII.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court award the following relief be awarded:

(a) A declaration that Defendants' policies, procedures, and practices have subjected Plaintiff to discrimination in violation of Title III of the Americans with Disabilities Act, Title V of the Americans with Disabilities Act, and Tex. Hum. Res. Code § 121.001, *et seq.*;

(b) An injunction prohibiting Defendants from implementing or enforcing any policy, procedure, or practice that denies individuals who are deaf or hard of hearing, such as A.A., equal access to and an equal opportunity to participate in and benefit from Defendants' services or programs;

(c) An injunction requiring Defendant to develop and comply with written policies, procedures, and practices to ensure that Defendants do not discriminate in the future against A.A. or other individuals with hearing or speech impairments;

(d) An injunction requiring Defendants to provide qualified interpreters on request when necessary to ensure effective communication with A.A. and similarly situated individuals who are deaf or hard of hearing;

(e) An injunction requiring Defendants to train all representatives and employees about A.A.'s rights and the rights of individuals who are deaf, hard of hearing, or have speech impairments, as well as provide training on Defendant's policies and procedures on providing qualified interpreters;

(f) An injunction requiring Defendant to list on their websites effective procedures and policies for requesting qualified sign language interpreters;

(g) An injunction requiring Defendants to cease and/or refrain from retaliation against Plaintiffs for asserting their rights to effective communication;

(h) An injunction requiring Defendants to cease and/or refrain from interfering with Plaintiffs' rights to effective communication;

(i) An injunction requiring Defendant Lone Star Region to refrain from instructing entities of any kind that they are not required to provide qualified sign language interpreters to ensure effective communication with Plaintiffs;

(j) Monetary damages, including but not limited to statutory, compensatory, and/or nominal damages;

(k) Reimbursement for out-of-pocket costs incurred as a result of Defendants' failure to provide qualified sign language interpreters;

(l) Reasonable costs and attorneys' fees;

(m) Interest, including prejudgment interest, at a legal rate; and

(n) Any and all other relief that the Court finds necessary and appropriate.

Date: April 25, 2025                    Respectfully submitted,


S. Tomiyo Stoner

UNDAUNTED LAW FIRM, P.C.
100 E. Las Colinas Blvd.
Suite 300, Room 91
Irving, TX 75039
T: (844) 232-4332
tstoner@undauntedlaw.com

Mary C. Vargas
Michael Steven Stein
Stein & Vargas, LLP
1717 K Street NW, Suite 900
Washington, DC 20006
T: (240) 793-3185
mary.vargas@steinvargas.com
michael.stein@steinvargas.com

*Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**
**A.A., et al. v. Lone Star Region Volleyball Association, Inc., et al, No. 1:24-cv-01070-RP**


I hereby certify that on this 25th day of April, 2025, **PLAINTIFFS' FIRST AMENDED**

**COMPLAINT** was served on all parties registered with CM/ECF, including the following:


Susan P. Burton
Sarah Elizabeth Lancaster
CORNELL SMITH MIERL
BRUTOCAO BURTON, LLP
1607 West Avenue
Austin, Texas 78701
T: (512) 328-1540
F: (512) 328-1541
sburton@conrellsmith.com
slancaster@cornellsmith.com

Bruce A. Griggs
Bonnie K. Serrano
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
301 Congress Avenue
Suite 1150
Austin, Texas 78701
T: (512) 344–4700
F: (512) 344–4701
bruce.griggs@ogletree.com
Bonnie.Serrano@ogletreedeakins.com

Simon W. Hendershot, III
HENDERSHOT COWART, P.C.
1800 Bering Drive
Suite 600
Houston, Texas 77057
T: (713) 783–3110
F: (713) 783–2809
trey@hchlawyers.com

Eric J. Hansum
HANSUM LAW FIRM, PLLC
5920 W. William Cannon Dr.
Bldg. 3, Ste. 650
Austin, TX 78749
T: (512) 481–9292
F: (512) 287–4239
ehansum@hansumlaw.com


s/*Michael Steven Stein*
Michael Steven Stein